THE STATE, EX REL. THE DAVIES MANUFACTURING CO., *v.* DONAHEY, AUDITOR OF STATE.

*Automobile license-tags — Appropriation therefor and method of drawing money — Relate to current expenses — Not subject to referendum — Under Section 1c, Article II, Constitution, 1912 — Open, competitive bids required — Section 6 of act of May 27, 1915 (106 O. L., 826).*

1. Section 6 of the appropriation act passed May 27, .1915 (106 O. L., 826), so far as the same applies to contracts made by the state for automobile license-tags and vouchers for payment thereunder, relates to the current expenses of the state government; and such section, including the condition therein provided that such vouchers must "show that competitive bids were secured," went into immediate effect and was not subject to a referendum under Section 1c, Article II of the Ohio Constitution.

2. A license-tag contract, made subsequent to July 1, 1915, was controlled by said Section 6, which required that reasonable efforts be made to secure open, competitive bids for the furnishing of such tags to the state.

(No. 15198 — Decided July 1, 1916.)

In Mandamus.

*Messrs. McGhee, Davis & Boulger,* for relator.

*Mr. Edward C. Turner,* attorney general, and *Mr. Charles Follett,* for defendant.

By the Court.   This is an action in mandamus brought by the relator against the auditor of state praying for a writ commanding him to issue his warrant upon the state treasurer in favor of the relator for the sum of $4,649.73, claimed to be due for automobile tags furnished in pursuance of a contract entered into between the relator and the secretary of state.   This contract was entered into on September 16, 1915.   On August 16, 1915, a written proposal was made by the relator to furnish automobile tags to the state, according to the specifications prepared by the secretary of state, for the sum of $19\frac{1}{4}$ cents per pair, and on the 15th day of September, 1915, the relator executed a bond to the state guaranteeing the faithful performance of such proposal.   The bond in question referred to the proposal as a "bid" made by the relator for the furnishing of such tags.

It appears that the contract in question was sublet by the relator to the New York Metal Ceiling Company who agreed to furnish the tags to the relator for the sum of 15 cents per pair.   Acting in pursuance of the contract relator furnished automobile tags to the state to the value of $21,661.66, and on the 4th day of March, 1916, the secretary of state issued his voucher in favor of

the relator for that sum. Respondent refusing to pay the same but acknowledging that the sum of $17,011.93 representing the subcontract price of 15 cents was just and reasonable, an amicable arrangement was entered into between him and the secretary of state by virtue of which in order to secure future delivery of the automobile tags required by the state he agreed, pending the determination of the validity of the original contract, to issue his warrant for the sum of $17,011.93 and for like vouchers thereafter presented for tags delivered to the state at a price of 15 cents. The writ is therefore asked for the excess of $4,649.73, representing the difference in price between the two contracts entered into by the relator as aforesaid.

Section 6 of the appropriation act (106 Ohio Laws, 826) provides:

"The monies appropriated in sections 2 and 3 of this act shall be drawn upon a requisition or voucher presented to the auditor, approved by the head of the department * * *. Such requisitions or vouchers shall set forth in itemized form and specify the classification of the service rendered, material furnished, or expenses incurred, and date of purchase or time of service, *and show that competitive bids were secured, unless otherwise provided by law* * * * and it shall be the duty of the auditor of state to see that these provisions are complied with."

The appropriation act took effect July 1, 1915, but was filed in the office of the secretary of state on June 5, 1915.

Opinion *Per Curiam.*

The contention is made that the contract of the secretary of state made in September, 1915, is not subject to Section 6 of the appropriation act, for the reason that the procuring of competitive bids under its provisions was an "item in such law appropriating money," which subjected it to a referendum under the referendum provisions of the Ohio constitution; that it did not go into immediate effect but remained inchoate until the expiration of 90 days after the same was filed in the office of the secretary of state, and therefore did not apply to the contract made prior thereto.

While it is true that such referendum provisions require that any item in such law appropriating money may be submitted to the electors of the state for their approval, this requirement does not comprehend its application to the condition requiring competitive bids in an appropriation relating to the current expenses of the state government and state institutions.

Section 1*d* of Article II of the Ohio Constitution specifically provides that appropriations for such current expenses shall go into immediate effect. The appropriation in question was an appropriation for the current expenses of the state government, and the limitation with reference to competitive bidding was simply a condition under which an appropriation should be drawn. The referendum provision applying to items for the appropriation of money does not apply to appropriations for current expenses.

In the present case there was no such competitive bidding as contemplated by law. While it is true that there are no positive statutory requirements relating to the preparation of specifications and the employment of specific methods by the state to secure competitive bidding, still reasonable efforts to secure such competitive bidding must be made by the secretary of state in order to comply with the provisions of the appropriation act referred to, and if the same is not done the state auditor has power to refuse to honor vouchers for the payment of money under the provisions of Section 6 of the act. The competition required must be open to everyone, as it was evidently the policy of the statute to require that current requirements should be obtained at the lowest and best price for the same quality of work and materials.

In the present case the secretary of state frankly stated that he acted under the belief that Section 6 of the act did not require competitive bidding, and it may be conceded that there was some legal doubt as to the potency of Section 6 to justify such belief. While there was a limited competition in the procurement of the tag contract, we are convinced that open, competitive bidding was not resorted to, but that it was unduly restricted. It should have been more general and pronounced and a wider opportunity therefor presented. And since it was the duty of the auditor of state, under the section of the law noted, to scrutinize vouchers of this character, it is the opinion of the court that under the facts stated there were sufficient grounds

to justify him in his refusal to honor the voucher in question.

For the reasons stated the writ is denied.

*Writt denied.*

Nichols, C. J., Johnson, Donahue, Newman, Jones and Matthias, JJ., concur.

Wanamaker, J., not participating.