IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 205

295 Mont. 467

984 P.2d 744

DOUG LOCKHART,

Petitioner and Appellant, No. 98-518

v.

NEW HAMPSHIRE INSURANCE

COMPANY,

Respondent and Insurer for

LABOR CONTRACTORS,

Employer and Respondent,

and

LIBERTY NORTHWEST INSURANCE

CORPORATION,

Petitioner and Respondent, No. 98-521

v.

NANCY PETAK,

Claimant, Respondent and Appellant,

and

COMMUNITY MEDICAL CENTER,

Respondent

---

APPEAL FROM: In the Workers' Compensation Court

The Honorable Mike McCarter, Judge presiding

COUNSEL OF RECORD:

For Appellants:

Laurie Wallace (argued), Bothe & Lauridsen; Columbia Falls, Montana

Rex Palmer (argued), Attorneys, Inc., P.C.; Missoula, Montana

For Respondents:

Donald Herndon (argued), Herndon, Sweeney & Halverson; Billings, Montana

Larry Jones (argued), Liberty Northwest; Missoula, Montana

Regan Whitworth (argued), Balyeat Law Offices; Missoula, Montana

For Amicus:

Patrick R. Sheehy (argued), Halverson, Sheehy & Plath; Billings, Montana (MTLA)

Oliver H. Goe (argued), Browning, Kaleczyc, Berry & Hoven; Helena, Montana (Assoc. of Health Care Providers)

---

Argued: February 11, 1999

Submitted: March 11, 1999

Decided: September 1, 1999

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1These combined claims were filed in the Montana Workers' Compensation Court by Doug Lockhart and Nancy Petak in part to recover attorney fees from medical benefits. The Workers' Compensation Court, however, found that medical benefits payable to a claimant are not subject to an attorney fee lien and that the fee must be paid by the claimants out of other funds.

¶2The issue raised on appeal is whether the attorney's fee lien codified at § 37-61-420, MCA, applies to medical benefits recovered due to the efforts of the attorney in a workers' compensation claim.

## FACTUAL BACKGROUND

¶3<u>Lockhart v. New Hampshire Insurance Company</u>

¶4On October 3, 1996, Doug Lockhart suffered an industrial injury to his right wrist while working as a construction laborer. The insurer, New Hampshire Insurance Company, denied liability for Lockhart's claim and the matter proceeded to a hearing before the Workers' Compensation Court on September 16, 1997. The court found the insurer liable for Lockhart's industrial injury and ordered payment of temporary total disability and medical benefits. The insurer did not appeal the decision of the Workers' Compensation Court and began payment of the court-ordered benefits.

¶5On December 16, 1997, Lockhart motioned the lower court for an order directing the insurer to pay attorney fees of twenty-five percent of the medical benefits directly to

Lockhart's attorney. The insurer objected to Lockhart's motion, and by order dated March 4, 1998, the court invited amicus curiae briefs on whether a twenty-five percent fee can and should be deducted from medical benefits being paid due to the efforts of the attorney.

¶6Liberty Northwest Insurance Corporation v. Petak

¶7On October 19, 1994, Nancy Petak injured her left hand while moving tables as an activities aid at a rest home. The injury developed an abscess that required brief hospitalization and surgery. The treatment was effective and Petak made a complete recovery and returned to her job in a matter of days.

¶8Notwithstanding a letter from Petak's treating surgeon and a letter from her treating infectious disease specialist recommending coverage, the insurer, Liberty Northwest, denied liability for Petak's medical expenses.

¶9On August 7, 1995, Petak filed a petition for hearing in her case, and the Workers' Compensation Court set the trial for the week of October 23, 1995. On August 22, 1995, Liberty Northwest filed its response in which it denied liability for Petak's care once again. However, on September 7, 1995, Liberty Northwest orally accepted liability for Petak's medical care and gave written notice of the acceptance by letter dated September 11, 1995. According to § 39-71-612(2), MCA, the timing of the acceptance (over thirty days before the date of the hearing) protected Liberty Northwest from paying Petak's attorney fees incurred to collect her compensation.

¶10Since identical issues were raised in the *Lockhart* and *Petak* cases, the Workers' Compensation Court joined the two cases for purposes of supplemental briefing and oral argument.

¶11The matter was argued on July 22, 1998, with all parties participating. The Workers' Compensation Court found that an attorney fee which becomes due as a result of payment of disputed medical benefits by the insurer cannot be paid out of the medical benefits directly, but must be paid by the claimant from other benefits or resources. The court arrived at this conclusion by determining that medical benefits are not benefits received by the claimant and, thus, no attorney fee lien can attach. According to the court, medical benefits are not "benefits," but an imposition of liability imposed on the insurer. Therefore, since an award of medical benefits does not entitle the claimant to receipt of money, there is no property against which an attorney fee lien can attach. Thus, the court

held that where a claim has been denied and later found compensable by the court without a separate award of attorney fees, a contingent attorney fee may be computed based upon medical benefits but the amount computed may not be deducted from the compensation payable to the medical providers.

## DISCUSSION

¶12The issue presented on appeal is whether the attorney's lien statute codified at § 37-61-420, MCA, applies to medical benefits recovered due to the efforts of the attorney in a workers' compensation case.

¶13The scope of our review of a decision from the Workers' Compensation Court is whether or not the Workers' Compensation Court correctly interpreted the law as it applies to the facts of this case. *See Pinyard v. State Compensation Ins. Fund* (1995), 271 Mont. 115, 119, 894 P.2d 932, 934.

¶14The Workers' Compensation Court held that medical benefits are not the property of the claimant and thus no attorney fee lien can attach.

¶15The attorney retainer agreement, drafted by the Department of Labor and Industry pursuant to § 39-71-613, MCA, allows for an attorney's contingency fee to be taken from "the amount of additional compensation payments the claimant receives due to the efforts of the attorney." The Department of Labor and Industry expressly included in the attorney retainer agreement, disputed medical benefits in the calculation of "additional compensation" pursuant to ARM 24.29.3802(5)(a).

¶16Additionally, we have held that the term "compensation benefits" includes medical benefits. In *Carlson v. Cain* (1985), 216 Mont. 129, 136, 700 P.2d 607, 612, we were asked to decide whether a penalty could be assessed for unreasonable delay in the payment of medical benefits. Before determining whether a penalty could be assessed, we first concluded that medical benefits were included in the term "compensation benefits" as used in the penalty statute codified at § 39-71-702, MCA (1979). After reviewing various statutory provisions, we held that:

There should be no argument that the compensation benefits which an injured worker receives under the Act includes compensation for time off the job, for disability and for medical payments. The Act itself makes the term "compensation" universally applicable to

all of the sections of the Act. Section 39-71-103, MCA, provides:

39-71-103. Compensation provisions. The compensation provisions of this chapter, whenever referred to, shall be held to include the provisions of compensation plan no. 1, 2, or 3, and all other sections of this chapter are applicable to the same or any part thereof.

*Carlson, 216 Mont. at 136-37, 700 P.2d at 612 (this statute has not been amended since 1947).*

¶17As in this case, the insurer in *Carlson* argued that since the claimant did not receive the medical benefit payments herself, the benefits could not be considered "compensation." We found this argument specious, and agreed with the reasoning of the Kansas court in *Farm Bureau Mutual Insurance Company v. Commercial Standard Insurance Company* (Kan. App. 1980), 612 P.2d 1265:

[T]he fact that the payment is made directly to the provider of services does not affect its status as compensation. KSA 1979 Supp. 44-504(b) permits subrogation for compensation paid by the employer regardless of who receives the actual payment.

*Carlson, 216 Mont. at 139, 700 P.2d at 614. Considering Montana's similar subrogation provision, we then held that since:*

[M]edical payments under the act for the purposes of subrogation are treated as a compensation benefit; for the same reason, medical payments should be treated as a compensation benefit when a penalty is considered for wrongful refusal or delay in payment."

*See Carlson, 216 Mont. at 139, 700 P.2d at 614.*

¶18We used similar reasoning in *Billings Deaconess Hospital, Inc. v. Angel* (1986), 219 Mont. 490, 712 P.2d 1323. In that case, we addressed the question of whether hospital services were considered to be "benefits payable to a claimant" for purposes of jurisdiction of the Workers' Compensation Court. We found that such benefits were "compensation benefits" pursuant to the Workers' Compensation Act and thus within the exclusive jurisdiction of the Workers' Compensation Court.

¶19Finally, we note that in the case of *Cheetham v. Liberty Northwest Insurance Corporation*, (dec'd July 16, 1997), WCC No. 9612-7675, the Workers' Compensation Court itself addressed the exact issue on appeal herein, and concluded the exact opposite

as it concluded in this case. Contrary to its decision in this case, the Workers' Compensation Court in *Cheetham* held that attorney fee liens attach as a matter of law to disputed medical benefits. The court relied on the language of the attorney retainer agreement and our decision in *Carlson*.

¶20 Based on the foregoing analysis, Lockhart and Petak maintain on appeal that medical benefits constitute "compensation" to the claimant and thus the attorney fee lien can attach pursuant to § 37-61-420, MCA, the attorney fee lien statute, regardless of whether the claimant actually receives the benefits in hand.

¶21 The respondents contend, on the other hand, that medical benefits are either an entitlement of the medical provider, or a debt owed by the insurer. Therefore, they argue, we should affirm the decision of the Workers' Compensation Court and require claimants to pay their attorney fees out of other assets. They cite § 39-71-743(3) and ARM 24.29.1401(2), for the proposition that after a workers' compensation claim has been accepted or determined to be compensable by an insurer, the obligation to pay for medical services passes from the claimant to the insurer, and therefore cannot constitute the claimant's "property" against which a lien could be attached.

¶22 The health care providers argue that of the three parties (the claimant, the attorney, or the medical provider) who potentially have to suffer the loss associated with payment or nonpayment of the attorney fees or medical benefits, it would be most unfair to impose such a burden on the medical providers. This is so, they maintain, because medical providers are already being paid less than full price for their services and thus "subsidizing" the workers' compensation system. The health care providers claim that a decision adverse to them may result in their refusal to provide medical service to claimants. Thus, they conclude that in the circumstances presented here, where there is no agreement expressed or implied, between the claimant's attorney and the hospital or other medical provider, a contractual obligation is not created or imposed on the hospital or medical provider to pay for the attorney's services. Moreover, they contend, in the context of the medical payments made to medical providers to reimburse them for services provided to injured workers, there is no judgment or settlement to which an attorney lien can attach.

¶23 Appellants maintain that the medical providers are the only party whose payments have not appreciably declined since 1993. Both claimants and claimants' attorneys are receiving comparatively significantly less in benefits and fees than are health care

providers. In light of this, appellants maintain that it is disingenuous for the health care providers to argue that it would be "unfair" to the medical providers to have attorney fees deducted from medical benefits.

¶24We agree with Lockhart and Petak that medical benefits are not the property of the medical providers simply because the medical providers are the actual recipients of the money. Nor do we believe that the medical benefits are simply an obligation of the insurer. The benefits are the individual claimant's and as such, the claimant should be allowed to pay the attorney fees out of his or her medical benefits.

¶25There is no question that an attorney representing an injured claimant is entitled to collect an attorney fee based upon the amount of disputed medical benefits ultimately paid by the insurer. The approved attorney retainer agreement, drafted by the Department of Labor and Industry, so provides. Furthermore, this Court has expressly held that medical benefits are included in the term "compensation benefits" for the purpose of assessing a penalty. *See Carlson,* 216 Mont. at 136, 700 P.2d at 612. The attorney's fee lien statute, Section 37-61-420(2), MCA, provides:

From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, or counterclaim which attaches to a verdict, report, decision, or judgment in his client's favor *and the proceeds thereof in whose hands they may come.* Such lien cannot be affected by any settlement between the parties before or after judgment.

(Emphasis added.)

¶26In the context of workers' compensation cases, it is well settled that attorney fee liens attach to all compensation upon the filing of an attorney retainer agreement with the Department of Labor and Industry. *See Kelleher Law Office v. State Compensation Ins. Fund* (1984), 213 Mont. 412, 416, 691 P.2d 823, 825. A proper and timely retainer agreement was filed in these cases and thus, an attorney fee lien has attached as a matter of law to all medical benefits paid.

¶27Finally, we note that the fundamental purpose of the workers' compensation laws is to provide a fund which replaces an injured worker's lost earnings and lost earning capacity. Given this purpose, it would be unfair for the claimant to have to pay a disproportionate amount of his or her attorney fees from his or her own personal resources.

¶28The judgment of the Workers' Compensation Court is reversed.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART

Justice Karla M. Gray, specially concurring.

¶29I specially concur in the Court's opinion, agreeing with the result reached but not with the entirety of the Court's analysis.

¶30It is clear to me that, whatever term is used for the medical services payments at issue in these cases, those payments were part of the claimants' "causes of action" against the insurers. It is equally clear that the ultimate payments for medical services in these cases arose from the efforts of the claimants' attorneys.

¶31I am not altogether convinced, however, that medical benefits are "compensation benefits" under the current statutory language in § 39-71-704, MCA, which differs from the version of that statute at issue in *Carlson*. Specifically, § 39-71-704, MCA, currently provides for payment for medical, hospital and related services under the Workers' Compensation Act as an "additional benefit" separate and apart from "compensation benefits" provided. It is my view that the proper application of that plain language mandates a conclusion that medical services payments are not "compensation benefits" as that term currently is used in the Act.

¶32In light of the clear language in § 37-61-420(2), MCA, the attorney lien statute, however, it is my view that the question of whether medical services payments are

"compensation benefits" is not particularly relevant to the issue before us which, unlike *Carlson*, does not concern whether the payments are "compensation benefits" under the language of the penalty statute at issue in *Carlson*. Here, neither the attorney retainer agreement drafted by the Department, the statute pursuant to which the agreement was drafted, nor the related administrative regulation uses the term "compensation benefits." Thus, the issue before us is simply whether the attorney lien statute applies to medical benefits recovered due to the efforts of a claimant's attorney in a worker's compensation case.

¶33 Section 37-61-420(2), MCA, provides that an attorney who appears for a party "has a lien upon his client's cause of action . . . which attaches to a . . . judgment in his client's favor and *the proceeds thereof in whose hands they may come*." (Emphasis added.) Section 37-61-420(2), MCA, further provides that the lien cannot be affected by any settlement between the parties before or after judgment. Applying § 37-61-420(2), MCA, to the cases before us, it is my opinion that the medical services payments were part of these claimants' causes of action in the Workers' Compensation Court and, upon either that court's judgment (in *Lockhart*) or a prejudgment "settlement" of that issue by the insurer (in *Petak*), the statutory attorney lien attached to the medical benefits proceeds of the causes of action without regard to the fact that the "proceeds" go to the medical providers rather than to the claimants.

¶34In addition, the "fairness" arguments advanced by the medical providers in these cases

are more properly addressed to the Montana Legislature. It is the Legislature which is responsible for maintaining an appropriate balance between the obligations of the various parties to--and entities interested in--workers' compensation disputes. Furthermore, it is the Legislature which enacted the attorney lien statute, closely regulates attorney fees in the workers' compensation arena and either sets or authorizes the Department to establish discounted fees and rates for medical services provided to workers' compensation claimants. Our duty is to apply the law as the Legislature enacts it. *See* § 1-2-101, MCA.

¶35For these reasons, I agree that the attorney lien codified at § 37-61-420, MCA, applies to medical benefits recovered due to the efforts of an attorney in a worker's compensation case and that the Workers' Compensation Court erred in concluding otherwise.

/S/ KARLA M. GRAY